# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

FILED
MAR 22 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of                      )
                                                    )
IN THE MATTER OF THE SEARCH OF INFORMATION          )   Case No.    4:19 MJ 109 DDN
information associated with Facebook, Inc. username Era Ave )
further described and identified as Facebook profile ID: )
https://www.facebook.com/jujuonly1me, stored at premises )
operated by Facebook, Inc., in Menlo Park, California. )

## APPLICATION FOR A SEARCH WARRANT

I, James Thayer, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following

information associated with Facebook username Era Ave further described and identified as Facebook profile ID: https://www.facebook.com/jujuonly1me

located in the    NORTHERN    District of    CALIFORNIA    , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18:1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
James Thayer, Deputy, USMS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 22, 2019

*Judge's signature*

City and state: St. Louis, MO

Honorable David D. Noce, U.S. Magistrate Judge
*Printed name and title*

AUSA:  RODNEY H. HOLMES, #6244551IL

# AFFIDAVIT

## INTRODUCTION

I, James Thayer, being duly sworn, state as follows:

A.  Background

1.  I, Special Deputy James Thayer, DSN 7228, am currently employed by St. Louis Metropolitan Police Department. I am currently assigned to the Intelligence Unit as a Federal Task Force Officer with the United States Marshals Service. I have been employed by St. Louis City for approximately thirteen years.

2.  I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning witnesses, the use of search and arrest warrants, and the use of informants. I am participating in the investigation described herein as a Deputy with the United States Marshal Service (USMS) and as part of a team of federal, State and local law enforcement officers investigating the matters identified herein.

3.  Because this affidavit is submitted for the limited purpose of securing search warrants, I have not included every fact known to me concerning this investigation. I have also set forth only the facts that I believe are necessary to establish probable cause to believe that the items to be seized, described on Attachment B are presently located at Facebook where the search warrants will be executed.

B.  Jurisdiction

4.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

1

5.	Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## FACILITIES AND LOCATIONS TO BE SEARCHED

6.	Agents and investigators request authority to search Facebook, Inc., and user accounts which are more fully described as the accounts of:

a.	**https://www.facebook.com/jujuonly1me** "USER NAME" DWu "ERA Ave" that is used by Jilvis Robinson;

These Facebook accounts are affiliated with and located within Facebook, Inc., an internet-based social networking site located at 1601 S. California Ave, Palo Alto, CA 94304, and Facebook, Inc., 156 University Ave, Palo Alto, CA 94310, in the Northern District of California.

## BACKGROUND ON FACEBOOK

7.	From my consultations with USMS personnel familiar with stored electronic communications, and my own training, experience and knowledge, I am aware that:

a.	The Internet is in part a computer communications network using interstate and foreign telephone and communication lines to transmit data streams, including data streams used to provide a means of communication from one computer to another and used to store, transfer and receive data and image files.

b.	An "Internet Protocol" (IP) address is a unique series of numbers, separated by a period, that identifies each computer using, or connected to, the Internet over a network. An IP address permits a computer (or other digital device) to communicate with other devices via the Internet. The IP addresses aids in identifying the location of digital devices that are connected to the Internet so that they can be differentiated from other devices. As a mailing address allows a sender to mail a letter, a remote computer uses an IP address to communicate with other computers.

2

  c. An "Internet Service Provider" (ISP) is an entity that provides access to the Internet to its subscribers.

  d. The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

  8. Facebook is a business and company that operates as a remote computing service, a provider of electronic communications services through ISPs. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. Services offered by Facebook are diverse and include the operation of a free, internet-based social media and networking site. Users create their own profile pages, which can include personal information, lists of personal interests, photographs, videos, and messages. Once an account is created a Facebook user can invite and 'add' friends to their Facebook account, and links to pages within and outside the Facebook environment. Facebook also permits users to send and receive private messages (the functional equivalent of e-mails) with other Facebook users, and to restrict the disclosure of certain information (profile information, photos, messages, videos and other content) exclusively to the selected groups of individuals such as Facebook 'friends' of their choosing.

  9. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook asks users to provide basic identity and contact information

3

to Facebook, either during the registration process or thereafter. Facebook also assigns a user identification number to each account. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Each user profile page includes a list of that user's 'friends,' along with links to the friends' profiles pages. Facebook users can adjust the privacy settings for their profile so that their profile information is visible only to their Facebook 'friends,' rather than to the public (which is the default setting).

10. For each user, Facebook retains information about the date and time at which the user's profile was created, the date and time at which the account was created, and the IP address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Facebook account.

11. Facebook also keeps internet protocol (IP) logs for each user. These logs contain information about the user's log-ins to Facebook, including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile. Facebook retains IP log information about each account access for at least ninety days; however, in some instances the data may be retained for longer or shorter periods of time.

12. Facebook users can exchange private mail messages with other users via Facebook. A given private message typically includes the Facebook user name of the sender and the recipient

4

of the message, a subject line, the actual content of the message, and a date stamp reflecting when the message was sent. Private messages are sent to the recipient's Facebook inbox and remain available until the user removes them. A user's sent messages are stored in a 'sent box' for that user on Facebook.

13. Facebook users can add a variety of information to their profiles, including photographs, videos, music and other audio files, lists of personal interests and preferences, journals or web logs ('blogs'), bulletins, news feeds, links to other locations on the Internet, which typically contain personal information about the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles. Facebook allows users to edit or delete comments on their own profile pages, and users can adjust their profile settings to allow them to pre-approve comments on their own profile pages.

14. For a given user, Facebook retains the basic identity information entered by the user, all data displayed on the user's profile, and all stored files (such as images and videos) contained in the user's account as long as the user has not edited the data or removed the files from the profile. When a given Facebook account is deleted, Facebook retains certain information relating to that account for some period of time, including user identity information, IP logs, and other data. Even if a given user deletes data, Facebook stores such data for extended periods of time on Facebook's servers. Member of the investigative team have requested that Facebook preserve all data with respect to the accounts for which your affiant seeks authority to search.

15. In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems or complaints. Social networking providers like Facebook typically retain records about such communications, including records of

contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

16. Messages, photos, audio videos, and other records stored on Facebook server by a subscriber may not necessarily be located in the subscriber's home/work computer. The subscriber or user may store data on Facebook servers for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer at his/her residence or employment. A search of the files in the computer at the subscriber's residence or place of employment will not necessarily uncover the files that the subscriber has stored on the Facebook server. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application.

17. It is common for individuals involved in criminal offense offenses to communicate with one another through Facebook and other online social media e-mail methods. Such communication includes discussions concerning planning, operations, intelligence gathering and dissemination, the transfer of critical information, the staging of videos, the identification and photos of money and contraband gained from criminal activities, and the identification of other associates and co-conspirators.

18. From my knowledge, training and experience, as well as discussions I have had with other agents and personnel familiar with computer-related investigations, I know that it is common for individuals engaged in the criminal activities described herein to use websites, social networking sites, and other internet-based applications to communicate with one another and facilitate their criminal activities. Such communications and the facilitation of criminal activities

include the use of these applications and electronic and stored data that would identify and describe: (a) other co-conspirators, aiders, and abettors who are participating in the illegal activities as well as the nature and scope of the illegal activities; (b) identify dates and locations where illegal activity has taken place or may take place in the future; (c) financial transactions and monetary transfers used to facilitate and continue criminal activities as well as the existence and location of records, bank accounts, and businesses pertaining to those activities; (d) sales and purchases of equipment, materials, and goods used to aid the co-conspirators in their endeavors as well as the location and use of assets accumulated; (e) travel, safe-houses, and locations where goods, materials and personnel stay or are kept; and, (f) the existence of other communication facilities, including telephones, computers, e-mail and other electronic accounts used to by co-conspirators to communicate.

19. By its very nature, websites, social networking accounts, and internet-based applications described herein are kept and stored in computers and electronic-memory devices by the host companies, in addition to or in lieu of hard-copy versions of this data. Because such evidence is stored electronically, the data and evidence of the crimes described herein may be stored and be present for long periods of time.

20. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts

...

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

21. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under

8

investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

22. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### Background of the Investigation and Probable Cause

23. On March 18, 2019, I was contacted by Sergeant Ann Long, DSN 7210, of the Intelligence Unit requesting assistance in locating and apprehending Jilvis ROBINSON. Robinson is currently wanted by St. Louis City for Assault 1st Degree and Armed Criminal Action per wanted reference number W47464803, Robbery 1st Degree (Carjacking) per wanted reference number W47464633, and Robbery 1st Degree from St. Louis County per warrant number 19SL-CR01649. Robinson is also being sought by the Eastern District of Missouri for a Supervised Release Violation per warrant number 4:17CR00062-1 ERW.

24. After receiving the case, I was also contacted by St. Louis City District 6 Detective Jennifer Nemeth who provided social media information that she received from a victim. Detective Nemeth provided me the Facebook Profile of ERA Ave at website address of: https://www.facebook.com/jujuonly1me. The web address also helps to verify the account belongs to Robinson due to the fact that Robinson's nickname is JUJU.

25. After receiving the Facebook Profile, I reviewed the website and could easily positively identify the male in the profile photos and live videos as Jilvis Robinson due to the scar

between his eyes. I also observed the page to be updated approximately each week. On March 13, 2018, Robinson created a live video talking about being a dangerous fella that had crack, fenne aka Fentanyl, and he is five minutes from anyone.

26. On March 20, 2019, The United States Marshals Service and I attempted an arrest attempt for Robinson at 5582 Era in St. Louis City. While conducting the surveillance, Robinson exited the residence and fled on foot. During the pursuit, a St. Louis City Officer was pursuing Robinson when Robinson dropped a Beretta 9mm from his waistband to the ground and made good his escape. The search for Robinson was unsuccessful. The weapon was seized and ran through a REJIS inquiry. The weapon was reported stolen from St. Louis County in 2018.

27. Knowing the crimes that Robinson is suspected of and the mentality he is showing on live Facebook videos, this warrant will aid in the capture of Robinson and hopefully assist with Officer Safety.

28. On March 22, 2019, a preservation request was sent to Facebook to preserve the contents of this account identified herein.

29. Based on the foregoing, Investigators believe that Jilvis Robinson is using his respective Facebook account to aid in conducting his criminal activities and to otherwise communicate about his illicit actions.

30. As described earlier in this affidavit, it is common for individuals involved in these activities and criminal offenses to communicate with one another through online methods such as Facebook and other online sources. As is apparent, this enables individuals to share photographs, videos, documents, files, and information. Online social media sites such as Facebook allow individuals to communicate and disseminate information to numerous individuals at one time, such as "Friends" and "Groups." Postings and sharing information can quickly reach large audiences

in an efficient manner. Facebook in particular also allows users to have private discussions, messages, and communications that may otherwise not be possible.

31. Investigators believe that Jilvis ROBINSON has regularly used Facebook to discuss and depict the actions and many of the facts described herein. Your affiant believes that ROBINSON communicated with associates and confederates through Facebook and other electronic means about their illicit and criminal activities.

## CONCLUSION

32. Based on the forgoing, Deputy Thayer respectfully submit there is probable cause to search the Facebook accounts:

    a.    **https://www.facebook.com/jujuonly1me ERA Ave.**

Which are identified in Attachment A for evidence, fruits, and instrumentalities concerning violation of : Title 18, United States Code, Section 1073.

33. Because the requested warrant does not involve the physical intrusion into a protected space, such as a home or residence, Deputy Thayer requests authority to execute the warrant at any time, day or night.

## REQUEST FOR SEALING ORDER

34. Deputy Thayer further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

11

48.     Pursuant to Local Rule 13.05(B)(2) and Title 18, U.S.C. Section 2705(a), Deputy Thayer requests this application, order, affidavit, attachment and order be sealed and that notice to the account-holder be precluded for a period of one year. As justification, Deputy Thayer submits that there are compelling reasons for sealing the affidavit and precluding notice for one year. Those reasons include the fact that this matter involves an ongoing investigation. Additionally, as is apparent from the facts described herein, the investigation involves violent and drug trafficking activities. Untimely exposure could expose details of the investigation, provide those under investigation an opportunity to destroy evidence, change their patterns of behavior, or allow flight from prosecution. Disclosure of the affidavit could jeopardize the privacy interests of the individuals identified herein and who remain under investigation. It is further requested that this Court order the companies from whom the information is sought to not disclose this request for a period of one year as is being requested in a separate Motion for non-disclosure. The untimely disclosure of the identities of innocent people or the use of confidential sources connected to the investigation could create a risk of harm to them.

Respectfully submitted,

_/s/ James Thayer_
James Thayer
Deputy
United States Marshal Service

SUBSCRIBED and SWORN to before me on __March 22__, 2019

_/s/ David D. Noce_
The Honorable David D. Noce
United States Magistrate Judge

Case: 4:19-mj-00109-DDN   Doc. #: 1   Filed: 03/22/19   Page: 14 of 19 PageID #: 14

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID

a.      **https://www.facebook.com/jujuonly1me**   **ERA Ave** that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) The contents of the Facebook account and user identification: to include all subscriber, contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All contact and personal identifying information, including[: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(c) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(d) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable

Image File ("EXIF") data and any other metadata associated with those photos and videos,

(e) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) Copies of all videos, graphics, photographs, images and audio data files posted by or to the account, to include all photos uploaded by the user ID and all photos uploaded by any user that have the account user tagged in them; internet based links; "fan" pages, "group" pages and memberships, and "applications;" and contact information for groups, a list of users currently registered to the group and information about the group head or administrator.

(l)   All past and present lists of friends created by the account;

(m)   All records of Facebook searches performed by the account;

(n)   All information about the user's access and use of Facebook Marketplace;

(o)   The types of service utilized by the user;

(p)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(q)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(r)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

II.   **Information to be seized by the government**

All information described above in Section I involving Jilvis Robinson and other confederates and conspirators to the aforementioned offenses from 2016 to the present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) the acquisition, use, possession or sale and distribution of illegal drugs; firearms, and of money or currency

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.  such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_3/22/2019_  _James Thrys_ (signature)
Date             Signature